UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RIGHT TO LIFE OF MICHIGAN; AMERICAN
ASSOCIATION OF PRO-LIFE
OBSTETRICIANS AND GYNECOLOGISTS,
on behalf of itself, its members, and their
patients; GINA JOHNSEN, Representative,
Michigan House of Representatives; LUKE
MEERMAN, Representative, Michigan House
of Representatives; JOSEPH BELLINO, JR.,
Senator, Michigan Senate; MELISSA
HALVORSON, M.D.; CHRISTIAN MEDICAL
AND DENTAL ASSOCIATIONS, on behalf of
itself, its members, and their patients;
CROSSROADS CARE CENTER; CELINA
ASBERG; GRACE FISHER; JANE ROE, a
fictitious name on behalf of preborn babies;
ANDREA SMITH; JOHN HUBBARD; LARA
HUBBARD; SAVE THE 1, on behalf of itself
and its members; and REBECCA KIESSLING,

     Plaintiffs,

v

GRETCHEN WHITMER, in her official
capacity as Governor of the State of Michigan;
DANA NESSEL, in her official capacity as
Attorney General of the State of Michigan; and
JOCELYN BENSON, in her official capacity as
Secretary of State of the State of Michigan,

    Defendants.

No. 1:23-cv-01189

HON. PAUL L. MALONEY

MAG. JUDGE RAY KENT

**REPLY IN SUPPORT OF
DEFENDANTS' MOTION TO
DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT**

**ORAL ARGUMENT
REQUESTED**

_____

Robert J. Muise (P62849)
David Yerushalmi (Ariz. Bar No. 009616;
DC Bar No. 978179; Cal. Bar No. 132011;
NY Bar No. 4632568)
American Freedom Law Center
Attorneys for Plaintiffs
P.O. Box 131098, Ann Arbor, MI 48113
(734) 635-3756
rmuise@americanfreedomlawcenter.org
dyerushalmi@americanfreedomlawcenter.org

Linus Banghart-Linn (P73230)
Kyla Barranco (P81082)
Rebecca Aboona (P81977)
Attorneys for Defendants
Mich. Dep't of Attorney General
P.O. Box 30212
Lansing, MI 48909
(517) 335-7622
Banghart-LinnL@michigan.gov
BarrancoK@michigan.gov
AboonaR1@michigan.gov

William Wagner (P79021)
Great Lakes Justice Center
Attorney for Plaintiffs
5600 W. Mount Hope Highway
Suite 2
Lansing, MI 48917
(517) 993-9123
Prof.wwjd@gmail.com

_____

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT**

**ORAL ARGUMENT REQUESTED**

Kyla Barranco (P81082)
Linus Banghart-Linn (P73230)
Rebecca Aboona (P81977)
Attorneys for Defendants Whitmer,
Nessel, and Benson
P.O. Box 30212
Lansing, MI 48909
BarrancoK@michigan.gov
Banghart-LinnL@michigan.gov
AboonaR1@michigan.gov
(517) 335-7622

Dated:  April 24, 2024

# TABLE OF CONTENTS

**Page**

Table of Contents ................................................................................................. i

Index of Authorities ........................................................................................... ii

Introduction ......................................................................................................... 1

Argument .............................................................................................................. 2

I.    Plaintiffs' alleged injuries do not satisfy Article III. ........................................ 2

II.   Plaintiffs' arguments do not salvage their claims under Rule 12(b)(6). ........... 8

    A.    Plaintiffs' arguments do not alter the longstanding recognition that fetuses do not possess Fourteenth Amendment rights. ................... 9

    B.    Plaintiffs' assertion that § 28 authorizes criminal sexual conduct has been correctly rejected as "disturbing and nonsensical." .............. 11

    C.    Plaintiffs' parental-rights argument does not plead the requisite state-based coercion. ................................................................... 12

    D.    Plaintiffs' Guarantee Clause Claim is non-justiciable and implausible. .......................................................................... 13

Conclusion and Relief Requested ................................................................. 16

# INDEX OF AUTHORITIES

Page

## Cases

*Ainscough v. Owens,*
   90 P.3d 851 (Colo. 2004) ......................................................................... 3

*Anspach v. City of Philadelphia, Department of Public Health,*
   503 F.3d 256 (3d Cir. 2007) .............................................................. 12, 13

*Dobbs v. Jackson Women's Health Organization,*
   597 U.S. 215 (2022) ......................................................................... 9, 11

*Doe v. Irwin,*
   615 F.2d 1162 (6th Cir. 1980) .............................................................. 12

*Havens Realty Corp. v. Coleman,*
   455 U.S. 363 (1982) ...................................................................... 6, 7, 8

*Hile v. Michigan,*
   86 F.4th 269 (6th Cir. 2023) ................................................................ 7, 8

*Hooker v. Weathers,*
   990 F.2d 913 (6th Cir. 1993) ............................................................... 7, 8

*Kanuszewski v. Michigan Department of Health and Human Services,*
   927 F.3d 396 (6th Cir. 2019) ................................................................. 12

*Largess v. Sup. Jud. Ct. for State of Mass.,*
   373 F.3d 219 (1st Cir. 2004) ................................................................. 14

*Lindsey v. Whitmer,*
   No. 1:23-cv-1025; 2024 WL 1711052 (W.D. Mich. April 10, 2024) ......................... 5

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ............................................................................ 3

*Nat'l Treasury Emps. Union v. United States,*
   101 F.3d 1423 (D.C. Cir. 1996) ............................................................... 7

*New York v. United States,*
   505 U.S. 144 (1992) ........................................................................... 14

*O'Neill v. Morse,*
   188 N.W.2d 785 (Mich. 1971) ........................................................................ 10

*People v. Swider,*
   No. 363450, 2023 WL 8106290 (Mich. Ct. App. Nov. 21, 2023) ........................... 11

*Phillips v. Snyder,*
   836 F.3d 707 (6th Cir. 2016) .................................................................... 13, 14

*Raines v. Byrd,*
   521 U.S. 811 (1997) ................................................................................... 5

*Roe v. Wade,*
   410 U.S. 113 (1973) ................................................................................... 9

*Romer v. Evans,*
   517 U.S. 620 (1996) ............................................................................... 2, 3

*Rucho v. Common Cause,*
   588 U.S. 684 (2019) ................................................................................ 14

*State by & through Tenn. Gen. Assembly v. U.S. Dep't of State,*
   931 F.3d 499 (6th Cir. 2019) ..................................................................... 5, 6

*Va. House of Delegates v. Bethune-Hill,*
   139 S. Ct. 1945 (2019) ............................................................................... 5

**Statutes**

1998 PA 386 ................................................................................................. 10

2023 PA 286, §§ 3, 5, 7 ..................................................................................... 6

42 U.S.C. § 238n ............................................................................................. 4

42 U.S.C. § 300a-7(c)(1)(B) .............................................................................. 4

42 U.S.C. § 300a-7(d) ...................................................................................... 4

Mich. Comp. Laws § 700.2108 ......................................................................... 10

Pub. L. No, 111-148, § 1303(b)(4) ..................................................................... 4

Pub. L. No. 111-117, § 508 ............................................................................... 4

**Constitutional Provisions**

Mich. Const. art. I, § 28 .......................................................................................... 6

Mich. Const. art. I, § 28(1) .................................................................................. 6, 15

**INTRODUCTION**

Plaintiffs' response to Defendants' motion to dismiss is, in large part, simply a regurgitation of the far-fetched, implausible allegations found in their first amended complaint.  And their scant new arguments and allegations demonstrate that their case contravenes settled Article III principles and is legally defective.

For example, throughout their response, Plaintiffs either cite inapposite caselaw or stretch applicable caselaw too far to support their attenuated purported injuries and highly speculative claims.  But, even in the face of these arguments, there remains no basis to conclude that Proposal 3 or § 28 has harmed Plaintiffs or that there is a substantial risk that it will harm them in the future.

Similarly, in the merits context, Plaintiffs provide no meaningful analysis and barely attempt to refute Defendants' arguments that their substantive claims are implausible.  They raise arguments that controlling precedent squarely rejects; this Court should, too.  And their interpretations of § 28 and its impact—including their asserted "parade of horribles"—border on the absurd and are wholly unsupported by the plain text of § 28.

At bottom, this lawsuit remains a fundamentally flawed, meritless, and overtly political attack on a fundamental constitutional right that was supported by a vast majority of Michiganders.  For these reasons, and for the reasons stated in Defendants' opening brief, this Court should dismiss the first amended complaint.

## ARGUMENT

### I.   Plaintiffs' alleged injuries do not satisfy Article III.

On the whole, Plaintiffs' responses to Defendants' standing arguments repeat the insufficient allegations contained in their amended complaint.  For example, instead of responding to Defendants' assertion that Plaintiff-Parents' injuries rely on an extensive chain of contingencies, (ECF No. 30, PageID.237), Plaintiffs baldly assert that they "face . . . a Hobson's choice of either foregoing public school . . . or subjecting their children to the threat of sexual predators" without explaining why it is even remotely likely that they would face such a choice.  (ECF No. 34, PageID.310.)  Similarly, rather than contending with the plain fact that § 28 in no way curtails malpractice claims or civil remedies against those who cause patients harm, (ECF No. 30, PageID.234–35), they proclaim that Asberg and Fisher face imminent injury because § 28 somehow "removes legal protections for all pregnant women."  (ECF No. 34, PageID.311.)  In sum, while Plaintiffs' parade of horribles is long, their explanation for how those horribles will be caused by § 28 is short (or non-existent) and speculative.

To the extent Plaintiffs actually respond to Defendants' motion, their arguments are easily cast aside.  Plaintiffs begin their standing argument by analogizing this case to *Romer v. Evans*, 517 U.S. 620 (1996), suggesting that it shows that they have standing here.  (ECF No. 34, PageID.303.)  A perplexing argument to be sure: *Romer* did not involve a question or analysis of whether the plaintiffs' injury in that case satisfied Article III's standing requirements.  Nor

could it have, as *Romer* was initiated in state court and went to the U.S. Supreme Court by way of the Colorado Supreme Court, where the state defendants had lost below.[1]  517 U.S. at 625–26.  Apart from that issue, Plaintiffs also erroneously use *Romer* as a means to reduce Article III's standing requirements, arguing that *Romer* proceeded despite only a "risk of discrimination."  (*See* ECF No. 34, PageID.303–04, emphasis omitted.)  Of course, *Romer* is not only factually and legally distinguishable from this case—it invalidated a constitutional amendment "born of animosity" and designed to *strip* rights whereas § 28 aims to *guarantee* rights[2]—but the standing requirements that Plaintiffs aim to reduce are "irreducible."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  This Court should therefore afford no weight to Plaintiffs' analogy to *Romer*.

Plaintiffs also fail to explain how the purported injuries faced by medical organizations and professionals are not speculative.  Their primary theory of injury is that § 28 prevents those organizations and professionals from "associating with" or "working in government operated hospitals and facilities" or "working for government employers."  (ECF No. 34, PageID.305.)  As a preliminary matter, this

---

[1] In other words, had the Court delved into Article III standing, that inquiry would have focused not on the injury caused to the plaintiffs by the constitutional amendment they were challenging, but instead the injury caused to the defendants by the Colorado Supreme Court's adverse decision invalidating that constitutional amendment.  And, in the event Plaintiffs here focus on the *Romer* plaintiffs standing in state court, "Colorado has a tradition of conferring standing to a wide class of plaintiffs" and its "court[s] frequently decided general complaints challenging the legality of government activities and other cases involving *intangible* harm."  *Ainscough v. Owens*, 90 P.3d 851, 853 (Colo. 2004).

[2] For this reason, *Romer* is also inapposite in the context of Plaintiffs' equal-protection claim.

theory is speculative on its face as Plaintiffs have not identified a single medical professional—either among themselves or their *thousands* of members—who has been forced, since § 28's enactment a year and a half ago, to (1) provide care that conflicts with their sincerely held religious beliefs, or (2) decline to work or associate with a State operated hospital or facility[3] based on a plausible and non-speculative fear of being required to compromise their sincerely held religious beliefs.  That is not surprising as federal and state conscience laws protect medical professionals' religious objections to providing abortion care.  The Church Amendments, for example, provide that doctors can "refuse[ ] to perform or assist" in an abortion or sterilization and that employers may not punish doctors for exercising that right. 42 U.S.C. § 300a-7(c)(1)(B); 42 U.S.C. § 300a-7(d).  The Public Health Service Act, 42 U.S.C. § 238n, the Weldon Amendment, Pub. L. No. 111-117, § 508, and the Affordable Care Act, Pub. L. No, 111-148, § 1303(b)(4), provide similar protections. And Michigan's own conscience laws—which have not been repealed under § 28— also protect medical providers.[4]  Mich. Comp. Laws §§ 333.20181–333.20183. Because Plaintiffs offer no reason to believe medical organizations and professionals

---

[3] Plaintiffs fail to account for the fact that while the University of Michigan Health System may be a *government* actor, it is not "the State" or under the control of any of Defendants sued in this case.  (ECF No. 34, PageID.305 n.8.)  The same is true of any local government-operated hospitals and facilities.

[4] The Reproductive Health Act, 2023 PA 286, specifically lists statutes repealed, and the state conscience laws are not among those statutes.  But even if those statutes were repealed by operation of § 28, federal conscience laws would still protect Plaintiffs.

will be injured in this way—let alone that such an injury is *imminent*—their claims cannot satisfy Article III.

Plaintiffs have also failed to overcome the extraordinary hurdle of showing legislator standing.  Plaintiffs attempt to cast aside *Raines v. Byrd*, 521 U.S. 811 (1997), asserting that "this case is unique in that § 28 nullifies the vote of *every* Michigan legislator who seeks legislation to regulate in the broad area of 'reproduction' . . . ."  (ECF No. 34, PageID.306–07.)  In doing so, Plaintiffs prove Defendants' point: Because § 28 impacts "all Members of [a legislature] and both Houses [] equally," no "member[ can] claim a 'personal stake' in the suit and the alleged injury [i]s not 'sufficiently concrete' to establish Article III standing."  *State by & through Tenn. Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 514 (6th Cir. 2019) (quoting *Raines*, 521 U.S. at 821, 830).

For this reason, precisely the same standing theory was recently rejected in *Lindsey v. Whitmer*, No. 1:23-cv-1025; 2024 WL 1711052 (W.D. Mich. April 10, 2024), a case in which two state senators and nine state representatives argued that Ballot Proposal 3 of 2018 and Ballot Proposal 2 of 2022—two successful voter-initiated constitutional amendments—violated their rights as legislators, taxpayers, and voters.  In rejecting the plaintiffs' legislator-standing theory, the court explained that "the deprivation of the power to cast a binding vote—is neither concrete nor particularized because it is shared by every single member of the Michigan Legislature."  *Lindsey*, 2024 WL 1711052, at *5; *see also Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1953–54 (2019) (relying on *Raines* to

explain that "individual members lack standing to assert the institutional interest of a legislature"); *Tenn. Gen. Assembly*, 931 F.3d at 514 ("An individual legislator, or group of legislators, do not have Article III standing based on an allegation of an institutional injury, or a complaint about a dilution of legislative power[.]").

Two additional points bear emphasis here.  *First*, § 28 does not prevent Plaintiff-Legislators from legislating in the field of reproduction.  In fact, § 28(1) expressly authorizes the Legislature to "regulate the provision of abortion care after fetal viability."  The Legislature has also recently enacted laws in the area of reproduction through its enactment of the Reproductive Health Act (the "RHA").  To the extent § 28 requires courts to scrutinize laws passed in this substantive area more closely, it operates no differently than a wide swath of constitutional provisions.  *Second*, and relatedly, the Michigan Legislature has already enacted the RHA, which codifies § 28 and provides a cause of action against governmental entities who violate either § 28 or § 3 of the RHA.  2023 PA 286, §§ 3, 5, 7.  Thus, as a matter of redressability, a favorable ruling here would do nothing for Plaintiff-Legislators (or any of the Plaintiffs).

Finally, as to organizational standing, Plaintiffs' arguments concerning resource expenditure and lobbying also fail to move the needle.  For example, they cite to *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), for the proposition that they have standing because they have expended resources in response to § 28.  (ECF No. 34, PageID.312–14.)  As *Havens* itself explains, organizational standing requires the challenged action to impose "more than simply a setback to the

organization's abstract social interest."  455 U.S. at 379.  Rather, to adequately

plead organizational standing, Plaintiffs must show that § 28 makes their "*activities*

more difficult."  *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430

(D.C. Cir. 1996).  For example, in *Havens*, the plaintiff specifically pleaded that the

defendants' racial steering impaired its "ability to provide counseling and referral

service for low-and moderate-income homeseekers."  455 U.S. at 379.  In other

words, the organizational plaintiff itself suffered an injury-in-fact and *then* spent

money to counteract that injury.  *Id.* ("Such concrete and demonstrable injury to the

organization's activities—with the *consequent* drain on the organization's

resources—constitutes far more than simply a setback to the organization's abstract

social interests.") (emphasis added).  But the external impairment of an

organization's provision of services is different from an organization's internal

choices about where to spend its funds, which is all Plaintiffs have alleged here.

(*See, e.g.*, ECF No. 34, PageID.313, "[RTL] has many programs that assist women in

crisis pregnancy situations and/or help women to choose life for their unborn baby.

These programs result in the expenditure of the organization's resources, and the

need for these programs has substantially increased as a result of Proposal 3.")  The

organizational Plaintiffs allege no facts indicating that § 28 *impedes* their ability to

further their mission; all they allege is that they will continue to perform the same

activities that they did prior to § 28's enactment.  That is not enough.

The same is true for *Hile v. Michigan*, 86 F.4th 269 (6th Cir. 2023), and

*Hooker v. Weathers*, 990 F.2d 913 (6th Cir. 1993), on which Plaintiffs rely.  At issue

in *Hile* was "Article VIII, § 2's bar on funding for private education," and whether it

prevented the plaintiffs from "lobby[ing] the Michigan legislature to allow them to

use their 529 plans for religious-school tuition."  86 F.4th at 275.  *Hile*, however,

involved a concrete and demonstrable injury that *preceded* the lobbying

impairment—i.e., parents "wish[ed] to use their 529 plans to pay for their children's

religious-school tuition[,]" which Article VIII, § 2 barred.  *Id.*  Even then, the

question of standing "[was] close[,]"[5] but the plaintiffs, at the very least, had alleged

some type of injury apart from a "setback to . . . abstract social interest[ ]"—an

injury that *Havens* disclaimed.  455 U.S. at 379.  And in *Hooker*, while the facts are

slim, it too held that there first must be "a concrete and demonstrable injury."  990

F.2d at 915.  Ultimately, to read *Havens*, *Hile*, and *Hooker* as broadly as Plaintiffs

suggest would allow any advocacy organization who opposes a law and intends to

devote resources to that opposition to have standing.  This would be a vast

expansion of Article III standing principles and should be rejected by this Court.

In summary, Plaintiffs fail to overcome the justiciability issues Defendants'

raised in their opening brief.

## II.    Plaintiffs' arguments do not salvage their claims under Rule 12(b)(6).

As with their standing theories, Plaintiffs' merits arguments merely restate

the vague, conclusory, and implausible allegations of their amended complaint.  As

---

[5] In addition to the *Hile* majority's determination that standing was a close call,
Judge Murphy, in dissent, opined that he "disagree[d] on the standing question and
so would not reach the merits."  *Hile*, 86 F.4th at 283 (Murphy, J., dissenting).

such, and for the sake of brevity, Defendants rely predominantly on the analysis outlined in their opening brief.  However, four aspects of Plaintiffs' response warrant further discussion: (1) Plaintiffs' fetal-rights arguments muddle the distinction between federal constitutional rights and state-recognized common law or statutory rights; (2) § 28 in no way authorizes "sexual exploitation"; (3) Plaintiffs do not refute that state-based coercion is a necessary element of their parental-rights claim; and (4) Plaintiffs' Guarantee Clause claim, as supplemented in their response brief, remains insufficient to state a claim.

### A.     Plaintiffs' arguments do not alter the longstanding recognition that fetuses do not possess Fourteenth Amendment rights.

Plaintiffs argue that the question of whether a fetus possesses rights under the Fourteenth Amendment remains open, and is one that this Court should "answer in the affirmative."  (ECF No. 34, PageID.335.)  This misrepresents the status of federal law, and this Court should decline Plaintiffs' invitation for two reasons.

*First*, Plaintiffs claim that *Roe v. Wade*, which explicitly recognized that "the word 'person,' as used in the Fourteenth Amendment, does not include the unborn," 410 U.S. 113, 158 (1973), has been overruled in its entirety by *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022).  (ECF No. 34, PageID.333–34.)  However, as Defendants noted in their opening brief, this portion of *Roe* was untouched by *Dobbs* and therefore remains good law.  (ECF No. 30, PageID.263.)

Not only that, but cases prior to *Roe*—which Plaintiffs fail to discuss—both explicitly and implicitly recognized the same.  (*Id.* at PageID.263–65.)

      *Second*, Plaintiffs cite Michigan and other state case law for the proposition that fetuses may possess certain rights prior to birth and, consequently, must possess a right to life under the Fourteenth Amendment.  (*See* ECF No. 34, PageID.336–38 & n.27.)  It is true that, in certain contexts, fetuses have statutory and common-law rights, such as the ability to bring causes of action in tort or to inherit.  *E.g.*, *O'Neill v. Morse*, 188 N.W.2d 785, 785–86 (Mich. 1971) (recognizing that a common law negligence action lies for prenatal injuries, and holding that a statutory cause of action lies for wrongful death of a fetus); Mich. Comp. Laws § 700.2108 ("An individual in gestation at a particular time is treated[, for purposes of inheritance,] as living at that time if the individual lives 120 hours or more after birth.").[6]  But that fact has no bearing on the question of their rights under the U.S. Constitution.  Indeed, despite many opportunities to do so, no court has ever recognized that fetuses possess rights under the Fourteenth Amendment—and many, including the Supreme Court, have rejected the notion.  Even *Dobbs* recognized this distinction, stating, "[O]ur decision is not based on any view about when a *State* should regard prenatal life as having rights or legally cognizable

---

[6] Notably, this statutory provision was enacted during the *Roe* era, 1998 PA 386, demonstrating that *Roe*'s recognition that fetuses do not possess rights under the Fourteenth Amendment does not mean that fetuses may possess no other rights under the law.

interests."  597 U.S. at 254 (emphasis added); *see also id.* at 262–63 (describing the
protection of fetal life as a *State* interest).

Simply put, longstanding precedent forecloses Plaintiffs' Fourteenth
Amendment claims brought on behalf of fetuses.

### B.    Plaintiffs' assertion that § 28 authorizes criminal sexual conduct has been correctly rejected as "disturbing and nonsensical."

In both their amended complaint and in response to Defendants' motion to
dismiss, Plaintiffs repeatedly claim that § 28 "prohibits the enforcement of criminal
statutes . . . designed to protect children," such as statutes criminalizing child
sexual abuse.  (*E.g.*, ECF No. 23, PageID.143, 155, 161, 167, 179, ¶¶ 6, 58, 81, 102,
160; ECF No. 34, PageID.323–24, 329.)  Last year, the Michigan Court of Appeals
found this argument meritless.  *People v. Swider*, No. 363450, 2023 WL 8106290, at
*8 (Mich. Ct. App. Nov. 21, 2023).  In *Swider*, the defendant claimed that § 28
limited the State's ability to convict him of first-degree criminal sexual conduct.  *Id.*
Rejecting this argument in no uncertain terms, the court stated:

> [The defendant] appears to be suggesting that MCL 750.520b
> impermissibly criminalizes sexual activity and that child sexual abuse
> is somehow encompassed within the "fundamental right to
> reproductive freedom."  Const. 1963, Art. 1, § 28.  That argument is
> disturbing and nonsensical.  Unsurprisingly, [the defendant] has
> provided no legal or factual support for the argument that MCL
> 750.520b violates the Michigan Constitution's protections for
> reproductive freedom.  This argument is meritless and abandoned. . . .

*Id.*  Plaintiffs likewise provide no legal or factual support for their suggestion that
§ 28 prevents the State from criminalizing sexual exploitation.

As in *Swider*, this Court should disregard Plaintiffs' argument as "disturbing and nonsensical."

### C.  Plaintiffs' parental-rights argument does not plead the requisite state-based coercion.

In an attempt to address Defendants' argument that they have failed to state a parental-rights claim, Plaintiffs assert that this case is unlike the claims analyzed in *Doe v. Irwin*, 615 F.2d 1162 (6th Cir. 1980), and *Anspach v. City of Philadelphia, Department of Public Health*, 503 F.3d 256 (3d Cir. 2007).  (ECF No. 34, PageID.328–29.)  But Plaintiffs fail to recognize that, regardless of their factual backgrounds, *Irwin* and *Anspach* map onto this case without any friction: Both cases rejected claims that offering reproductive care to minors interferes with parental decision-making when (1) the care in question was not compulsory, and (2) the minors' parents remained completely free to be involved in their children's care. *Irwin*, 615 F.2d at 1168; *Anspach*, 503 F.3d at 264, 267.

Plaintiffs' citation to *Kanuszewski v. Michigan Department of Health and Human Services*, 927 F.3d 396 (6th Cir. 2019), does nothing to save their claim, as *Kanuszewski* did not alter this general rule.  (ECF No. 34, PageID.326–27.)  Notably, *Kanuszewski* involved an appeal from a Rule 12 dismissal, which obligated the Sixth Circuit to accept as true the plaintiffs' allegations that the Michigan newborn screening program retained, used, and sold their children's blood samples *automatically*, without informed consent.  927 F.3d at 420.  The Court concluded that, subject to factfinding, the plaintiffs had plausibly alleged that the State had

inserted itself between the parent and their child—consistent with the coercion element articulated in *Irwin* and *Anspach*.  *Id.*

In contrast, here, Plaintiffs allege no facts suggesting that the state has taken or will take any *automatic* action under § 28 with respect to Plaintiff-Parents' minor children.  In fact, as noted in Defendants' opening brief, § 28 does not mandate that *any* individual exercise their right to reproductive freedom (or, for that matter, engage in any activity whatsoever).  (ECF No. 30, PageID.268.)  Like in *Anspach*, where the court emphasized that the "services offered at a public health clinic are wholly voluntary" and provided "only at the request of individuals who come there and ask for them," 503 F.3d at 269, § 28 is triggered only when an individual affirmatively seeks to exercise that right.  Parental involvement is nowhere burdened, discouraged, or prohibited.

Ultimately, the required element of state coercion is lacking from Plaintiffs' parental-rights claim, making dismissal appropriate.

**D.   Plaintiffs' Guarantee Clause Claim is non-justiciable and implausible.**

As Defendants noted in their opening brief, the Supreme Court has "[t]raditionally . . . held that claims brought under the Guarantee Clause are nonjusticiable political questions."  *Phillips v. Snyder*, 836 F.3d 707, 716 (6th Cir. 2016) (quotations omitted).  It recently reaffirmed this tradition, noting that "[t]his Court has several times concluded . . . that the Guarantee Clause does not provide the basis for a justiciable claim."  *Rucho v. Common Cause*, 588 U.S. 684, 718

13

(2019).[7]  Plaintiffs provide no basis for concluding that this traditional Guarantee Clause jurisprudence does not apply here.

Instead, in their response to Defendants' motion to dismiss, Plaintiffs assert, for the first time, that controlling case law provides an exception to this general rule of non-justiciability.  (ECF No. 34, PageID.341–45.)  Yet Plaintiffs do not explain the contours of such an exception, do not outline the factors for application of such an exception, do not apply those factors to the instant case, and do not cite to a single case (precedential or otherwise) in which such an exception was found to apply—let alone a case analogous to this.  Instead, support for Plaintiffs' reading of the Guarantee Clause comes largely from scholarship.  (*E.g.*, ECF No. 34, PageID.341–44.)  However, "scholars have interpreted [the relevant] portion of the Guarantee Clause in numerous, often conflicting, ways." *Largess v. Sup. Jud. Ct. for State of Mass.*, 373 F.3d 219, 226 (1st Cir. 2004) (compiling scholarship).  As such, this Court should not put much stock in the musings of scholars in this context, especially when contrary to a longstanding tradition of non-justiciability.

In any event, even assuming that Guarantee Clause claims may, in certain rare circumstances, be justiciable, Plaintiffs' claim is not because it is implausible. Plaintiffs argue that their claim "is a challenge to the specific 'non-republican

---

[7] Notably, in rejecting as non-justiciable the Guarantee Clause claim in *Rucho*, the Supreme Court did not engage in any analysis of the purported exceptions that Plaintiffs today advance—despite deciding *Rucho* nearly three decades after it ostensibly "expressed doubt that all Guarantee Clause challenges are not justiciable" in *New York v. United States*, 505 U.S. 144 (1992).  *Phillips*, 836 F.3d at 717.

feature' passed pursuant to Proposal 3[,] which nullifies the authority of an entire branch of state government (legislative branch) to pass laws addressing 'reproduction'—an exceedingly broad area that has historically been within its legitimate legislative domain."  (ECF No. 34, PageID.343.)  But Plaintiffs do not sufficiently explain how § 28 prohibits such legislative action or "immun[izes]" reproduction from any form of regulation.  In fact, and wholly to the contrary, the plain language of § 28 explicitly contemplates that the state may regulate where such regulation is "justified by a compelling state interest achieved by the least restrictive means."  Mich. Const. art I, § 28(1).  Moreover, "the state may regulate the provision of abortion care after fetal viability, provided that in no circumstance shall the state prohibit an abortion that, in the professional judgment of an attending health care professional, is medically indicated to protect the life or physical or mental health of the pregnant individual."  *Id.*  Plaintiffs do not explain how this language could possibly be interpreted as completely foreclosing any form of legislation "addressing 'reproduction,' " such that the legislature's authority in this area is "nullifie[d.]"  (ECF No. 34, PageID.343.)  <u>In fact, as previously noted, the Michigan legislature recently passed the RHA, demonstrating that it *is* possible to legislate in the area of "reproduction."</u>

At bottom, Plaintiffs' Guarantee Clause claim (Claim VI) is both non-justiciable and implausible.  It should therefore be dismissed.

## CONCLUSION AND RELIEF REQUESTED

For these reasons and the reasons stated in Defendants' opening brief, this

Court should dismiss the amended complaint with prejudice.

Respectfully submitted,

*/s/ Kyla Barranco*
Kyla Barranco (P81082)
Linus Banghart-Linn (P73230)
Rebecca Aboona (P81977)
Attorneys for Defendants Whitmer,
Nessel, and Benson
P.O. Box 30212
Lansing, MI 48909
BarrancoK@michigan.gov
Banghart-LinnL@michigan.gov
AboonaR1@michigan.gov
Dated: April 24, 2024                    (517) 335-7622

16