UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RIGHT TO LIFE OF MICHIGAN, *et al.*,

      Plaintiffs,

                                    Case No. 1:23-cv-1189

v.

                                      Hon. Paul L. Maloney

GRETCHEN WHITMER, *et al.*,

      Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

In 2023, Michigan voters approved an amendment to the Michigan Constituion, Article I, § 28. The amendment provides that "every individual has a fundamental right to reproductive freedom, which entails the right to make and effectuate decisions about all matters relating to pregnancy, including . . . abortion care." Mich. Const. 1963, Art. I, § 28. Plaintiffs allege this amendment violates multiple provisions of the United States Constitution. Plaintiffs sued the Governor of Michigan, the Michigan Attorney General, and the Michigan Secretary of State, in their official capacities. Defendants filed a motion to dismiss asserting a lack of standing and ripeness and also the failure to state a claim (ECF No. 29). The court finds that Plaintiffs lack standing and will grant the motion.

### I.

### A.

Rule 12(b)(1) allows a defendant to move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A motion to dismiss for lack of Article III standing is properly brought under Rule 12(b)(1) because Article III provides jurisdictional limitations that implicate the Court's power to hear claims. *Gross v. Hougland*, 712 F.2d 1034, 1036 (6th Cir.

1983); *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)) ("The Court will consider the 12(b)(1) motion first, as the 12(b)(6) challenge becomes moot if subject matter jurisdiction is lacking.").

"When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996). A district court may "resolve factual disputes when necessary to resolve challenges to subject matter jurisdiction." *Id.* Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack on subject matter jurisdiction goes to whether the plaintiff has properly alleged a basis for subject matter jurisdiction, and the trial court takes the allegations of the complaint as true. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). A factual attack is a challenge to the factual existence of subject matter jurisdiction. Here, Defendants make a facial attack.

**B.**

When a defendant challenges subject matter jurisdiction as a facial attack, courts review the allegations in the complaint under the standards for a Rule 12(b)(6) motion. *Hile v. Michigan*, 86 F.4th 269, 273 (6th Cir. 2023). The court accepts the factual allegation in the complaint as true and draws all inferences in favor of the plaintiffs. *Id.* However, "'a legal conclusion couched as a factual allegation' need not be accepted as true." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When an allegation contains a mixture of fact and law, the court must accept the facts as true but does not have to accept any legal conclusion. *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC. v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 396 (2018). Factual allegations need not be pled in exacting detail but they must be sufficient to provide plausible support for a claim; mere "labels and conclusions" will not be enough. *Hobart-Mayfield, Inc. v.*

2

*Nat'l Operating Comm. on Standards for Athletic Equipment*, 48 F.4th 656, 663 (6th Cir. 2022). "Naked assertions devoid of further factual enhancement contribute nothing to the sufficiency of the complaint."  *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 355 (6th Cir. 2014) (citation modified; citation omitted).

## II.

Plaintiffs filed an amended complaint which functions as the controlling pleading (ECF No. 23 Compl.).  The complaint names more than fifteen plaintiffs.  They include five organizations: Right to Life of Michigan, American Association of Pro-Life Obstetricians and Gynecologists, Christian Medical and Dental Associations, Crossroads Care Center, and Save the 1 ("Plaintiff Organizations").  The complaint names three members of the Michigan Legislature as plaintiffs: Representative Gina Johnsen, Representative Luke Meerman, and Senator Joseph Bellino, Jr ("Plaintiff Legislators").  Plaintiffs also includes six private individuals: Melissa Halvorson, Grace Fisher, Celina Asberg, Andrea Smith, John Hubbard, and Lara Hubbard. Finally, the complaint includes as a plaintiff a "Jane Roe," a fictitious name representing "all children in the womb." (Compl. ¶ 57.)  Several plaintiffs claim to sue on behalf of Jane Roe as a next friend. (*id.*)

Generally, Plaintiffs allege that the amendment will harm the standard of health care in Michigan.  More specifically, Plaintiffs allege that § 28 reduces legal protections for women.  They allege that § 28 deprives parents of the ability to make decisions about medical treatment for their children.  Plaintiffs contend that § 28 burdens the free exercise of religion.  And, Plaintiffs claim that § 28 violates the Guarantee Clause in Article IV, § 4 of our Constitution.  Plaintiffs plead six causes of action.  They claim that § 28 (1) violates the Fourteenth Amendment's Equal Protection Clause, (2) the Fourteenth Amendment's Due Process Clause (substantive due process: parental rights), (3) the First Amendment's Free Exercise Clause, (4) the First Amendment's Free Speech

Clause, (5) the Fourteenth Amendment's Due Process Clause (procedural due process), and (6) the Guarantee Clause.

## III.

As part of the motion to dismiss, Defendants argue Plaintiffs all lack standing to challenge 28.  More specifically, Defendants argue that Plaintiffs cannot establish an injury in fact.  Plaintiffs disagree.[1]

## A.

Article III, § 1, of the Constitution limits the jurisdiction of federal courts to hear only actual cases and controversies.  *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017).  Known as standing, it is "the threshold question in every federal case."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  The Court's standing analysis is both plaintiff- and provision-specific.  *See Fednav, Ltd. v. Chester*, 547 F.3d 607, 614 (6th Cir. 2008).  A "plaintiff must demonstrate standing for each claim he seeks to press," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), and "a plaintiff must demonstrate standing separately for each form of relief sought."  *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)).  "That one plaintiff has standing to assert a particular claim does not mean that all of them do."  *Chester*, 547 F.3d at 614 (citing *Allen v. Wright*, 468 U.S. 737, 752 (1984)).  And "that a plaintiff has standing to challenge one of a statute's provisions does not mean the plaintiff has

---

[1]      The portions of briefs addressing standing approach the issue using remarkably different organizational choices.  Defendants approach standing with seriatim, first separating the individuals from the organizations and then addressing each plaintiff within those two divisions.  Plaintiffs address standing in a single, monolithic thirteen-page section of their response brief aptly described as a stream of consciousness.  Counsel, of course, have discretion to organize their briefs as they see fit.  The court has endeavored to address the various arguments raised by the parties.

standing to challenge all of them." *Id.* Standing, therefore, "is not dispensed in gross." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017).

To establish standing, a plaintiff must show (1) an actual or imminent injury in fact; (2) a causal connection between the injury and the defendant; and (3) that the injury is redressable by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). "For a plaintiff to get in the federal courthouse door and obtain a judicial determination of what the governing law is, the plaintiff cannot be a mere bystander, but instead must have a 'personal stake' in the dispute." *Food and Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024) (*FDA*).

An injury within the meaning of Article III must be "concrete, particularized, and actual or imminent." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). "In recent years, the Supreme Court has tightened the hatches on this requirement." *Vonderhaar v. Vill. of Evandale*, 906 F.3d 397, 401 (6th Cir. 2018). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (citing Black's Law Dictionary 479 (9th ed. 2009)). "The injury must also be particularized; the injury must affect 'the plaintiff in a personal an individual way' and not be a generalized grievance." *FDA*, 602 U.S. at 381. A plaintiff cannot establish standing base on a "highly speculative fear" of some future harm; rather the injury must be "certainly impending." *Id.* (citation omitted). Further, the injury must be real and not abstract. *Id.* "An allegation 'of *possible* future injury' is not enough." *Vonderhaar*, 906 F.3d at 401 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

A general disagreement with government action will not establish an injury in fact for standing purposes. *See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982) ("The judicial power of the United States defined by Art. III

is not an unconditioned authority to determine the constitutionality of legislative or executive acts."). The injury-in-fact standard requires more than an injury to a cognizable interest. *Lujan*, 504 U.S. at 563. "It requires that the party seeking review be himself among the injured," or allege that he will suffer an imminent injury. *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972); *Lujan*, 504 U.S. at 564. "By requiring the plaintiff to show an injury in fact, Article III standing screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular governmental action." *FDA*, 602 U.S. at 381.

## B.

In their response brief, Plaintiffs broadly discuss and generally refer the court to two Supreme Court cases: *Romer v. Evans*, 517 U.S. 624 (199) and *June Medical Services, LLC v. Russo*, 591 U.S. 299 (2020). Neither opinion provides a basis for this court to find standing.

Plaintiffs liken this action to *Romer*, a lawsuit involving a challenge to an amendment to Colorado's constitution prohibiting statutes and ordinances affording protections or preferences for homosexual, lesbian or bisexual persons. With a cursory glance, the parallels between the two lawsuits appear obvious. Plaintiffs argue that "*Romer* demonstrates that Plaintiffs have standing" (ECF No. 34 PageID.304). But none of the opinions, not in the state trial court, the state supreme court or the United States Supreme Court, discussed or even considered standing. When opinions do not address issues like standing, the opinions (at least on that issue) have no precedential effect. *See Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 91 (1988) ("We have often said that drive-by jurisdictional rulings . . . have no precedential effect."); *Stafford v. IBM Corp.*, 78 F.4th 62, 69 (2d Cir. 2023) ("In any event, *Zeiler* did not address standing or mootness, and 'drive-by jurisdictional rulings of this sort have no precedential effect.'") (citation omitted); *Gettman v.*

*DEA*, 290 F.3d 430, 436 (D.C. Cir. 2002) ("Where a court has simply assumed standing, that assumption creates no precedent upon which future litigants may rely.  This is well established.").

*June Medical* involved a challenge to a Louisiana statute requiring individuals who offer abortions to have admission privileges at a hospital within 30 miles of the place where they perform abortions.  591 U.S at 307.  Justice Breyer wrote the lead opinion joined by Justices Ginsberg, Sotomayor and Kagan.  Chief Justice Roberts authored a concurrence.  Plaintiffs quote extensively from a portion of Justice Breyer's opinion considering third-party standing.  But Justice Breyer began the discussion of third-party standing by noting that the State had waived the argument. *June Medical*, 591 U.S. at 316 ("We think that the State has waived that argument.").  Accordingly, the discussion of third-party standing that followed was, at best, dicta.

Justice Breyer then explained why the plaintiff had standing by identifying when the Court has allowed third-party standing.  He explained that "we have generally permitted plaintiffs to assert third-party rights in cases where the 'enforcement of the challenged restriction *against the litigant* would result indirectly in the violation of third party rights.'"  *June Medical*, 591 U.S. at 318 (citation omitted).  "In such cases, we have explained, 'the obvious claimant' and 'the least awkward challenger' is the party upon whom the challenged statute imposes 'legal duties and disabilities.'"  *Id.* at 319 (citation omitted).  Justice Breyer reasoned that plaintiffs, the abortion providers, challenged "a law that regulates their conduct" and which "threatened imposition of governmental sanctions' for noncompliance."  *Id.* Because the providers "must actually go through the process of applying for and maintaining admitting privileges, they are far better positioned than their patients to address the burdens of compliance."

Plaintiffs reason that if abortion providers have standing to defend the third-party rights of their patients then organizations "who seek to protect life in this context" "have standing to invoke

the rights of their actual or potential patients who would be harmed by § 28."[2]  (ECF No. 34).  Our Supreme Court explained that third-party standing occurs only when three criteria can be met: (1) the litigant must have suffered an injury in fact, (2) the litigant must have a close relation to the third party, and (3) there must be some hinderance to the third party's ability to protect his or her own interests.  *Powers v. Ohio*, 499 U.S. 400, 411 (1991); *see Lathfield Invs., LLC v. City of Lathrup Vill.*, 136 F.4th 282, 294-95 (6th Cir. 2025).  Generally, Plaintiffs make no attempt to show that women who might be harmed by § 28 face barriers to protecting their own interests.  More specifically, none of the plaintiffs have identified a particular patient who faces some barrier or hinderance her ability to protect her own interests.

## IV.  Individual Plaintiffs

### A. Plaintiff Legislators (Gina Johnsen, Luke Meerman, and Joseph Bellino, Jr.)

Plaintiff Legislators currently serve as elected representatives in the Michigan Legislature (Compl. ¶ 32.) All three assert that they "have actively worked, and would like to continue their work, through the Michigan Legislature, to propose and/or pass legislation protecting" pro-life interests.  (*Id.*)  The amendment, however, "prevents them from doing so."  (*Id.*)  Plaintiffs contend that  § 28 renders Plaintiff Legislators' votes "null" on reproduction issues.  (*See id.* ¶¶ 187-88.)  Consequently, Defendants have violated the United States Constitution's Guarantee Clause (Art. IV, § 4) in enacting § 28.  (*See id.* ¶¶ 185-88.)

The contours of a legislator's standing to bring suit to vindicate a purported institutional injury are set forth in three cases: *Raines v. Byrd*, 521 U.S. 811 (1997); *Coleman v. Miller*, 307

---

[2]     Organizations are not akin to individual abortion providers.  As discussed below, organizations can establish standing either by direct injury or by an injury to an identified member. The complaint identifies only Dr. Halverson as a medical doctor with patients.

U.S. 433 (1939); and *Arizona State Legislature v. Arizona Independent Redistricting Commission*, 576 U.S. 787 (2015).

*Raines* involved a challenge to the federal Line Item Veto Act by four United States Senators and two members of the United States House Representatives.  521 U.S. at 813-14.  The Supreme Court concluded that the legislators lacked personal standing to sue because the alleged injury was an "institutional injury (the diminution of legislative power), which necessarily damage[d] all Members of Congress . . . equally."  *Id.* at 821.  The Court explained that they were not "deprived of something to which they *personally* [were] entitled" and that they were claiming an injury in their "official capacities."  *Id.*  Thus, the legislators' alleged injury ran with the position, not the person.  *Id.*

In reaching that decision, the *Raines* Court had to distinguish the facts from the facts of *Coleman*.  In *Coleman*, a bloc of twenty state legislators voted against the adoption of a proposed amendment to the federal constitution.  307 U.S. at 435-36.  The forty-person state legislature split evenly on the vote.  *Id.*  The state's lieutenant governor, as presiding officer of the state senate, cast the decisive tie-breaking vote to pass the amendment.  *Id.* at 436.  The opposing legislators challenged the lieutenant governor's right to cast a tie-breaking vote.  *Id.*  The Supreme Court held that the legislators had standing. *Id.* at 438.  Because they had an "interest in maintaining the effectiveness of their votes," which collectively could have defeated ratification.  *Id.* at 438, 441.  These circumstances, however, are few and far between.  *Lindsey v. Whitmer*, 124 F.4th 408, 413 (6th Cir. 2024) (explaining that *Coleman* is a narrow exception to the legislative standing doctrine).  Thus, the *Raines* Court held that *Coleman* is the exception, not the rule.  *Raines*, 521 U.S. at 823.

The only other occasion where the Court has permitted legislators to assert a claimed institutional injury is *Arizona State Legislature v. Arizona Independent Redistricting Commission*.

There, the entire Arizona legislature challenged a state constitutional amendment that placed sole authority for congressional redistricting in an independent redistricting commission. 576 U.S. at 792. The Court explained that the Arizona State Legislature suffered a concrete injury when the amendment seized "its alleged prerogative to initiate redistricting." *Id.* at 800. In essence, the Redistricting Commission "completely nullifie[d] any vote by the Legislature" to adopt its own redistricting plans. *Id.* at 804. In determining whether this case fit the narrow *Coleman* exception, the Court emphasized the number of legislators who were deprived of their votes. For one, there were more legislators involved than the six in *Raines*. *Id.* at 801-02. The Court analogized the entire Arizona legislature to the bloc of senators in *Coleman*. *Id.* at 803-04. The Court also went on to say that, like the legislation in *Coleman*, the Arizona amendment "would 'completely nullify' any vote by the Legislature, now or 'in the future,' purporting to adopt a redistricting plan." *Id.* at 804 (quoting *Raines*, 521 U.S. at 823). Accordingly, the entire Arizona State Legislature had standing.

Here, the Plaintiff Legislators' allegations fit within *Raines'* general limitation on legislative standing. *See Lindsey*, 124 F.4th at 412 (finding that *Raines* "exemplifies the general rule: that legislators usually lack Article III authority to bring constitutional challenges to legislation."). While Plaintiff Legislators describe their injury as personal, the injury constitutes a limitation on the office they hold and the institution generally and not on them individually. The injury described in the complaint limits all members of the legislature equally. "What *Raines* demonstrates is that individual legislator plaintiffs cannot bring suit for an alleged institutional injury." *State by and through Tennessee Gen. Assembly v. United States Dept. of State*, 931 F.3d 499, 511 (6tth Cir. 2019). Plaintiff Legislators' inability to propose and vote for pro-life legislation amounts to "an abstract dilution of legislative power" and not "vote nullification." *Id.*

(quoting *Raines*, 521 U.S. at 826).  Accordingly, Plaintiff Legislators lack standing to bring their claims.

### B. Plaintiff Doctor Melissa Halvorson

Doctor Halvorson "is a pro-life physician and member of AAPLOG."  (*Id.* ¶ 33.)  She opposes § 28 as it violates her "sincerely held religious beliefs, and she opposes such services on medical grounds as they are harmful to her patients and potential patients."  (*Id.*)  Section 28 "forces her to provide the objectionable services in violation of her" religious beliefs and medical judgment.  (*Id.*)  She also claims it "prevents [her] from working at state-operated hospitals and medical facilities in Michigan."  (*Id.* ¶ 36.)

Doctor Halvorson's grievances with § 28, sincere as they may be, do not satisfy Article III's injury-in-fact requirement.  Her general disagreement with the legislation does not demonstrate an injury in fact.  Many of her allegations make legal conclusions, which the court need not accept as true (e.g., § 28 removes statutory protections).  Her conclusory assertion that she will be forced to provide objectionable services lacks sufficient detail for the court to accept the allegation as true.  And the allegation fails to establish the causation necessary to connect the speculative injury to § 28.  *See FDA*, 602 U.S. at 390-91. She has not pled facts to show a credible and imminent threat to her medical license.  Nor does she plead facts to establish a plausible fear that she will be subjected to administrative complaints.  Halverson has not alleged that she currently seeks employment at state-associated hospitals or would likely do so in the future.

### C. Plaintiff Rebecca Kiessling

Kiessling is the founder and president of "Save The 1."  (Compl. ¶ 66.)  She pleads her mother was raped, sought an abortion, but could not obtain one because the procedure was illegal.  (*Id.*)  "[K]iessling spends much of her time and talent advocating for laws that strictly limit the availability of abortion."  (*Id.*)  Kiessling claims § 28 is the most "permissive abortion law in the

country, undermining her efforts and those of Save The 1." (*Id.*)  Defendants describe Kiessling as a "concerned bystander."  *See United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 687 (1973).

Kiessling's disagreement with § 28 does not establish the injury-in-fact prong.  She has not alleged a concrete or imminent injury to herself.  At best, she "has an interest, but no direct stake" in opposing § 28.  *Diamond v. Charles*, 476 U.S. 54, 67 (1986).  In their response, Plaintiffs do not specifically address Defendants' challenge to Kiessling's standing.  Plaintiffs have, therefore, waived any opposition to Defendants' argument.

### D. Plaintiffs Celina Asberg and Grace Fisher

Asberg is a mother and plans on getting pregnant again.  (Compl. ¶ 52).  Fisher is currently pregnant and plans on having more children.  (*Id.* ¶ 55).  Both oppose § 28 because it allegedly "immunizes" from legal liability anyone who aids or assists with reproductive healthcare.  (*See id.* ¶¶ 52, 55.)  In turn, § 28 "lessens the standard of care" for prenatal care, pregnancy care, childbirth, and postpartum care.  (*Id.*)  Both plead that § 28 lowers the standard of care because the amendment changes the standard for care from informed to voluntary consent.  (*Id.*).

Asberg and Fisher have not pled sufficient facts to establish standing.  Plaintiffs have not pled facts to show that a different standard of care results in a lower quality of care.  The allegations of imminent or future harm necessarily rest on legal conclusions, that § 28 provides immunity from legal liability and changes the nature of consent required.  The possible or potential harm to these two individuals follows from that legal conclusion.  Plaintiffs have not included sufficiently detailed factual allegations to establish causation connecting §28 to a lower quality of care for the for expectant mothers generally. Moreover, Asberg and Fisher can only speculate that the care they receive when they might get pregnant at some point in the future would be of lower quality.

### E. Plaintiffs Andrea Smith, John Hubbard, and Lara Hubbard

Plaintiffs Andrea Smith, John Hubbard, and Lara Hubbard ("Plaintiff Parents") are parents of minor children who attend public schools.  (Compl. ¶ 58.)

> Plaintiff Parents oppose § 28 because it removes them from the authority to control and direct the upbringing of their children by permitting school officials and others to aid and assist their children with obtaining contraception; procuring an abortion; seeking "gender reassignment,' puberty blocking medication, or sterilization; and engaging in sexual intercourse or other sexual acts, including with an adult, all without Plaintiff Parents' consent or knowledge and with impunity.

(*Id.*) They allege that § 28 gives them a "Hobson's choice of either removing their children from public school or subjecting their children to sexual exploitation."  (*Id.* ¶ 59.)  They additionally claim that § 28 makes them "fearful about bringing their children to state-operated medical facilities . . . due to the risks of harm caused by § 28."  (*Id.*)

Plaintiff Parents have not alleged sufficient facts to show an injury in fact.  Plaintiff Parents have not demonstrated an actual, concrete injury.  Plaintiffs do not plead that § 28 compels or requires any action by employees of public schools.  Section 28 does not mention school officials, let alone require school officials or a school district to do anything.  Plaintiffs plead only speculative future injuries. Plaintiffs have not pled facts show even a likelihood that their children will seek contraception, an abortion, gender reassignment, puberty blocking medication, sterilization or an intimate relationship with an adult.  And again, the possibility of future harm hinges on a legal conclusion that the court need not accept for the purpose of this motion.  Plaintiffs point to the language in § 28, that "all individuals have a fundamental right to reproductive freedom," and contend that the language necessarily applies to minors.  (Compl. ¶ 58.)

Plaintiffs filed a notice of supplemental authority directing the court to *Mahmoud v. Taylor*, 145 S. Ct. 2332 (2025).  The *Mahmoud* opinion does not include any discussion of standing.  The holding in *Mahmoud* does not help Plaintiffs here.  The Court granted a preliminary injunction

finding a likelihood that the plaintiff parents would succeed on the merits of their free exercise claim.  The Court observed that whether a law substantially interferes with the religious development of a child "will always be fact intensive.  It will depend on the specific religious beliefs and practices asserts, as well as the specific nature of the educational requirement or curricular feature at issue."  *Id.* at 2353 (internal citation omitted).  The Court found a likely violation of the First Amendment because the school board "requires teachers to instruct young children using storybooks that explicitly contradict their parents' religious views."  *Id.* at 2356.  The complaint in this lawsuit does not plead sufficient facts to show how § 28 compels instruction or includes curricular requirements that would violate the Plaintiff Parents' religious views.

### F. Plaintiff Jane Roe

Plaintiff "Jane Roe, a fictitious name, represents all those children in the womb who will be harmed by § 28."  (Compl. ¶ 57.)  Jane Roe also represents "those babies born alive who survive a failed abortion attempt by an abortion provider." (*Id.*).

The allegations in the complaint fail to establish standing for Jane Roe.  Indeed, the complaint makes no attempt at all to plead facts to show standing for Jane Rue.  Without additional detailed factual allegations, the court cannot identify any particular child "in the womb who will be harmed by § 28."  *See, e.g., Doe by and through Doe v. Hunter*, 796 F. App'x 532, 536-37 (10th Cir. 2019) (involving a complaint brought by Jane Doe, described as an unborn child of less than 22 weeks gestational age, lacked standing to challenge exceptions for legal abortions in a state fetal-homicide law because the complaint did "not establish that Doe's mother ever sought an abortion or even had any intention to do so.").  Plaintiffs have not sufficiently identified any baby born alive who survived a failed abortion attempt.

The causation or traceability requirement poses a problem for Jane Roe.  The amendment provides that "every individual has . . . the right to make an effectuate decisions about all matter

relating to pregnancy, including . . . abortion care."  Section 28 does not require a mother or a medical professional to terminate a pregnancy.  The State of Michigan does not make any decision or compel any procedure.  Generally, "'an injury that results for the third party's *voluntary and independent actions*' does not establish traceability; the government must do more, say by establishing a '*command*' of the third party's actions." *Turaani v. Wray*, 988 F.3d 313, 317 (6th Cir. 2021) (quoting *Crawford v. United States Dept. of Treasury*, 868 F.3d 448, 457 (6th Cir. 2017)).  For standing, "a plaintiff must show that the defendant's actions had a 'determinative and coercive effect' on the third party such that the actions of the third party can be said to have been caused by the defendant." *Changizi v. Dept. of Health and Human Servs.*, 82 F.4th 492, 497 (6th Cir. 2023).

The court finds the discussion of standing in *Doe v. Hochul*, 139 F.4th 165 (2d 2025) helpful.  Several years earlier, New York enacted the Reproductive Heath Act (RHA), which decriminalized abortions and eliminated the criminal offense of fetal homicide.  *Id.* at 173.  Plaintiffs, which included fetuses, challenged the statute.  *Id.*  The Second Circuit affirmed the district court's conclusion that a social worker could not represent the fetuses based on the lack of information about the fetuses and the potential for harm to them.  *Id.* at 181-83.  The court acknowledged "a near certainty" that there were viable fetuses in New York.  *Id.* at 182.  Nevertheless, standing cannot be established by speculating that, "at some point in the future, an unidentified woman may seek to obtain an abortion for an unidentified fetus from an unidentified abortion provider." *Id.*  Also relevant here, the Second Circuit affirmed the district court's conclusion that a proposed amended complaint naming "Baby Nicholas" as a plaintiff-fetus failed to overcome the standing problem for fetuses generally.  *Id.* at 174.  The complaint identified Baby Nicholas's mother and sought to appoint the mother as next friend.  *Id.* at 183.  The Second Circuit

found the complaint failed to plead an imminent injury because the plaintiffs did not plead that the mother had concrete plans to terminate her pregnancy.  *Id.* at 186.

Because the court concludes Jane Roe lacks standing, the court need not consider whether the different plaintiffs can represent Jane Roe as next friend.  *See Digital Media Solutions, LLC v. South Univ. of Ohio, LLC*, 59 F.4th 772, 782 (6th Cir. 2023).

## V. Plaintiff Organizations

Five organizations also assert claims relating to § 28's enactment: Right to Life of Michigan; American Association of Pro-Life Obstetricians and Gynecologists ("AAPLOG"); Christian Medical and Dental Associations ("CMDA"); Crossroads Care Center; and Save The 1. "An organization can satisfy Article III's standing requirements by suing on its own behalf, called 'organizational standing,' or by suing on behalf of its members, called 'associational' or 'representative' standing."  *Child.'s Health Def. v. U.S. Food & Drug Admin.*, No. 21-6203, 2022 WL 2704554, at *2 (6th Cir. July 12, 2022).

### A. Direct Organizational Standing

"Organizations may have standing 'to sue on their own behalf for injuries they have sustained.'"  *FDA*, 602 U.S. at 393 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n. 19 (1982)).  "In doing so, however, organizations must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals."  *Id.* (citing *Havens*, 455 U.S. at 378-79).  And "[l]ike an individual, an organization may not establish standing simply based on the 'intensity of the litigant's interest' . . . 'no matter how longstanding the interest and no matter how qualified the organization.'"  *Id.* (quoting *Valley Forge*, 454 U.S. at 486; *Sierra Club*, 405 U.S. at 739).  The organization, therefore, must show "far more than simply a setback to the organization's abstract social interests."  *Havens*, 455 U.S. at 379.  The Sixth Circuit has noted that organizations face a "substantially difficult" challenge to establish standing when the object of government

16

regulation falls on a third party rather than the organization itself. *Tennessee Conference of the NAACP v. Lee*, 105 F.4th 888, 902 (6th Cir. 2024) (citation omitted). This barrier poses a particular problem for an organization when the challenged government action does not require action by the organization or forbid action by the organization. *Id.*

The Supreme Court outlined organizational standing based on a diversion of resources in *Havens*. There, the question was whether a housing counseling organization, HOME, had standing under the Fair Housing Act to sue Havens Realty, which owned and operated apartment complexes. *Id.* at 368, 378. Havens gave HOME'S Black employees false information about apartment availability—a practice known as racial steering. *Id.* at 366, 368, n. 1. Importantly, HOME was not just an advocacy group,; it also provided housing counseling services. *Id.* at 368. The Court found HOME had standing because Havens's misrepresentations impaired HOME's ability to counsel and refer low- and moderate-income home seekers. *Id.* at 379. This impairment, HOME claimed, was a direct injury to its core operations—like a retailer suing a manufacturer for selling defective products that disrupt its business. *Id.* The Court agreed with HOME and ruled that it provided an injury in fact. *Id.* The Court has since noted that "*Havens* was an unusual case, and this Court has been careful not to extend the *Havens* holding beyond its context." *FDA*, 602 U.S. at 396. The Sixth Circuit has held that *Havens* does not stand for the proposition that any organization can establish standing simply by diverting resources in response to a defendant's actions. *Lee*, 105 F.4th at 903. And, the Sixth Circuit observed that *Havens* involved standing for a claim seeking damages, not an injunction. *Id.* at 903-04.

*Right to Life.* Right to Life of Michigan is an organization that "works on behalf of defenseless or vulnerable human beings, born and unborn, within its identified issues of abortion, infanticide, euthanasia and assisted suicide." (Compl. ¶ 14.) It "has many programs that assist

women in crisis pregnancy situations." (*Id.* ¶ 15.)  "These programs result in the expenditure of the organization's resources" and are in demand because of § 28. (*Id.*)  As a result of § 28, Right to Life's legislative efforts have been negatively affected (*Id.* ¶ 21).

The complaint fails to pled sufficient facts to establish standing for Right to Life.  Right to Life has not established standing under a diversion-of-resources theory.  An organization cannot "spend its way into standing simply by expending money" advocating against § 28. *FDA*, 602 U.S. at 394.  Plaintiffs have not alleged facts that would align with the facts in *Havens*.  Moreover, the money Right to Life spends assisting women furthers its mission even if it means less money for other aspects of its mission. *See Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 982 (6th Cir. 2020).  Right to Life seeks prospective relief, not damages.  Right to Life pleads only "backward-looking costs, not the imminent future injury needed to establishing standing for declaratory and injunctive relief[.]" *Id.*

*American Association of Pro-Life Obstetricians and Gynecologists.*  AAPLOG "is a nonprofit organization comprised of board certified, professional medical experts who practice in the field of Obstetrics and Gynecology." (Compl. ¶ 23.)  "AAPLOG's mission is to encourage and equip medical practitioners to provide an evidence-based rationale for defending the lives of both the pregnant mother and her unborn child.  AAPLOG and its members oppose abortion." (*Id.* ¶ 26.)  AAPLOG claims that it represents medical professionals who will likely work at state-operated medical facilities. (*Id.* ¶ 24).  AAPLOG pleads that § 28 forces its members to accept abortion as medical care contrary to conscience, and that § 28 removes any right to conscience protections. (*Id.* ¶ 29).

The complaint fails to plead sufficient fact to establish standing for AAPLOG.  AAPLOG pleads an interest affected by § 28, which does not by itself confer standing. *Sierra Club v. Morton*,

405 U.S. 727, 739 (1972).  In their response, Plaintiffs asserts AAPLOG has standing based on diversion of resources.  Plaintiffs did not plead facts to support a diversion-of-resources basis for standing for AAPLOG.  Plaintiffs resources theory would likely fail for the same reason the theory failed for Right to Life.  The various other facts and theories Plaintiffs identify for standing for AAPLOG all concern injury to its members, not the organization itself.

*Crossroads Care Center.*  Crossroads "is a pro-life, faith-based, nonprofit organization committed to serving men and women by providing medical, educational, and support services and resources related to pregnancy and sexual health."  (Compl. ¶ 37.)  Crossroads claims that because of § 28, "[it] is forced to expend additional and substantial resources to provide care for women harmed by abortion and for its education and counseling efforts to convince pregnant women to choose life for their unborn babies."  (*Id.* ¶ 39). Crossroads "is subject to state laws and regulations" which "mandate[s]" Crossroads to "protect and enforce the 'right' to 'reproductive freedom.'"  (*Id.* ¶ 40.)  Crossroads "fears government-based regulatory harms, which are inevitable due to § 28." (*Id.* ¶ 45).  Plaintiff plead that Defendant Nessel will target crisis pregnancy centers like Crossroads using regulations targeting consumer fraud, among others.  (*Id.* ¶¶ 125-26).

The complaint fails to plead sufficient facts to establish standing for Crossroads.  The complaint does not allege the § 28 caused Crossroads to *divert* resources; the complaint pleads that § 28 has put a greater demand the services that Crossroads offers.  The limited reading of *Havens* in *FDA* and *Lee* preclude Plaintiffs from establishing standing for Crossroads based on expending resources.  The other factual allegations for standing lack rest on combination of largely conclusory assertions and speculation.  Plaintiffs have not pled facts to support a credible and imminent threat of regulatory action by Defendants against Crossroads.  Plaintiffs do not plead facts to show a

plausible risk that some third party might submit a consumer complaint to the State such that Defendant might then investigate Crossroads.

Plaintiffs have not pled facts to show that § 28 has chilled Crossroad's free expression. To the extent Plaintiffs contend otherwise, a subjective chill by itself does not confer standing. *Bigelow v. Virginia*, 421 U.S. 809, 816-17 (1976) (quoting *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)).  "Allegations of a subjective 'chill' are not an adequate substitute for a claim of a specific present objective harm or a threat of specific future harm[.]"  *Laird*, 408 U.S. at 13-14.

*Christian Medical and Dental Associations.*  CMDA "is a nonprofit organization comprised of healthcare students as well as board-eligible and board-certified healthcare professionals, including experts in various medical fields."  (Compl. ¶ 46.)  "CMDA educates, encourages, and equips Christian healthcare professionals to glorify God."  (*Id.* ¶ 47.)  CMDA adheres to "Christian principles," and § 28 goes against those principles.  (*Id.* ¶ 48.)  CDMA's interest, however, is the type of "value interest" *Sierra Club* finds insufficient to confer direct standing.  CDMA lacks direct standing.

*Save The 1.*  "Save The 1 is a nonprofit, Michigan corporation."  (*Id.* ¶ 61.)  Its "mission is to educate everyone on why all preborn children should be protected by law and accepted by society."  (*Id.* ¶ 62.)  "Save The 1 expends resources on its outreach efforts, and these efforts have been significantly undermined by § 28."  (*Id.* ¶ 65.)

The complaint does not plead sufficient facts to establish standing for Save the 1.  Spending money to oppose abortion practices and § 28 does not constitute an injury in fact.  Opposing abortion practice is part of Save the 1's mission.  The allegations in the complaint do not fit in the narrow confines of *Havens* for a diversion of resources theory of standing.  The complaint does not plausibly allege a direct injury to the organization.

## B.  Associational Standing

Plaintiff Organizations also assert representational or associational standing on behalf of their members.[3]  This doctrine was laid out in *Friends of the Earth v. Laidlaw*: "An association has standing . . . on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members . . . ." 528 U.S. at 181. Showing a likelihood that a defendant's conduct will harm some unknown member of an organization will not establish standing. *Ass'n of American Physicians & Surgeons v. United States Food and Drug Admin.*, 13 F.4th 531, 543 (6th Cir. 2021) (*AAPS*).  To establish associational standing, a plaintiff "organization must instead identify a member who has suffered (or is about to suffer) a concrete and particularized injury from the defendant's conduct.  And the organization must show that its requested relief will redress this injury."[4] *Id.*; *see Weiser v. Benson*, 48 F.4th 617, 623 n.4 (6th Cir. 2022) (quoting *ASPS*); *see, e.g., Michigan Ass'n of Pub. Sch. Acads. v. United States Dep't of Educ.*, 711 F. Supp. 3d 686, 691-693 (W.D. Mich. 2024) (Maloney, J.) (finding no associational standing because the complaint failed to allege which of its members would suffer an injury).

Plaintiff Organizations have not plead sufficient facts to establish associational standing. The complaint does not name a single individual member of Right to Life or CMDA.  The

---

[3]     At least one panel for the Sixth Circuit has questioned the continuing viability of associational standing.  *See Ass'n of American Physicians & Surgeons v. United States Food and Drug Admin.*, 13 F.4th 531, 538-42 (6th Cir. 2021); *see FDA*, 602 U.S. at 399-405 (Thomas, J. concurring).

[4]     Other circuits have also required members to be named.  *See Satanic Temple v. Labrador*, —F.4th—, No. 24-1243, 2025 WL 2524437, at *3 (9th Cir. 2025); *Nat'l Infusion Ctr. Assoc. v. Becerra*, 116 F.4th 488, 497 (5th Cir. 2024); *Religious Sisters of Mercy v. Becerra*, 55 Fl4th 583, 601-02 (8th Cir. 2022); *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1009-10 (7th Cir. 2021); *Jacobson v. Florida Sec'y of State*, 974 F.3d 1236, 1249 (11th Cir. 2020); *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016).

complaint pleads that Kiessling is a member of Save the 1.  Because the court concludes that Kiessling lacks standing, so too does Save the 1.  The complaint pleads that Halvorson is a member of AAPLOG and that AAPLOG is a member of Crossroads.  Again, because the court concludes that Halvorson lacks standing, so too do AAPLOG and Crossroads.

Plaintiffs refer the court to *Hile v. Michigan*, as a basis for standing for the Plaintiff Organizations, a case involving a political process equal protection claim.  *Hile* does not require a different outcome; the court found associational standing, not a direct injury to the organization. In *Hile*, individual parents and an organization challenged a 1970 amendment to Michigan's constitution that prohibited payments of public money to private, denominational, and other nonpublic schools.  86 F.4th at 271.  On appeal, the plaintiffs pursued an equal protection claim based on a political process theory of liability.  *Id.* at 272-73.  The plaintiffs alleged that, because of the amendment, they could not simply lobby their state representatives and senators for government aid and were forced to mount a statewide campaign to amend the constitution.  *Id.* at 273.  The Sixth Circuit considered whether "the complaint plausibly alleged that Plaintiffs were able and ready to participate in lobbying activities related to public funding for private religious schools, such that they have suffered a concrete injury-in-fact."  *Id.* at 274.  The court found standing for the individual plaintiff parents because they "ready and able to lobby the Michigan legislature to allow them to use their 529 plans for religious-school tuition."  *Id.* at 275.  The organization had standing because the individual parents had standing.  *Id.*  Here, none of the individual plaintiffs plead that that they are ready and able to participate in lobbying activities.

## VI.

Article III standing requires plaintiffs to demonstrate an injury in fact.  *FDA*, 602 U.S. at 394.  No injury or imminent injury means no standing.  *See id.*  The allegations in the complaint fail to establish standing for any individual plaintiff.  The allegations also fail to show a direct

injury to any organization.  Because none of the induvial plaintiffs have standing, the organizations cannot show standing based on standing of their members.  Accordingly, the court will grant Defendants' motion to dismiss.


## **<u>ORDER</u>**

The Court **GRANTS** Defendants' motion to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction due to lack of Article III standing (ECF No. 29.)    Plaintiffs' complaint is therefore **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.


Dated: <u>September 30, 2025</u>            <u>/s/ Paul L. Maloney</u>
                                                PAUL L. MALONEY
                                                UNITED STATES DISTRICT JUDGE